UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN BRANCATO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | Case No. 2:13-cv-01212-RFB-GWF<br><br>ORDER REJECTING REPORT AND RECOMMENDATION |

**I.　INTRODUCTION**

Before the Court is Plaintiff John Brancato's Motion for Reversal and Remand. ECF No. 12. On May 8, 2014, the Honorable George Foley, Jr., United States Magistrate Judge, issued a Report and Recommendation in which he recommended Brancato's motion be denied. ECF No. 16. Brancato timely objected, ECF No. 17, and a response was filed by Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), ECF No. 18. For the reasons discussed below, the Court does not accept the Report and Recommendation, grants in part Brancato's Motion for Reversal and Remand, and remands this matter for further proceedings before the Administrative Law Judge ("ALJ").

**II.　BACKGROUND**

Neither Brancato nor the Commissioner has objected to the Magistrate Judge's summary of the background facts, and so the Court incorporates, without restating, that background section here. See Report and Recommendation 1:19–11:6, ECF No. 16.

### III. LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may file specific written objections to the findings and recommendations of a magistrate judge. Id. § 636(b)(1); D. Nev. R. IB 3-2(a). When written objections have been filed, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails to object, however, a district court is not required to conduct "any review," de novo or otherwise, of the report and recommendations of a Magistrate Judge. Thomas v. Arn, 474 U.S. 140, 149 (1985).

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations, and authorizes district courts to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In undertaking that review, "[a]n ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks omitted).

"If the evidence can reasonably support either affirming or reversing a decision, [a reviewing court] may not substitute [its] judgment for that of the Commissioner." Lingenfelter, 504 F.3d at 1035. Nevertheless, the court may not simply affirm by selecting a subset of the evidence supporting the ALJ's conclusion, nor can the Court affirm on a ground on which the ALJ did not rely. Garrison, 759 F.3d at 1009–10. Rather, the court must "review the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion," to determine whether that conclusion is supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities." Id.

The SSA has established a five-step sequential evaluation procedure for determining Social Security disability claims. See 20 C.F.R. § 404.1520(a)(4); Garrison, 759 F.3d at 1010. Here, the ALJ resolved Brancato's claim at step four, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant has the RFC necessary to perform the requirements of his past relevant work; if so, the ALJ will find the claimant is not disabled within the meaning of the Social Security Act. Admin. Record 29 ("AR"); 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined as the most an individual is capable of doing in a work setting despite the individual's impairments and related symptoms, such as pain. 20 C.F.R. § 416.945(a)(1).

### IV.  DISCUSSON

After review of the record, the parties' briefs, and Judge Foley's Report and Recommendation, the Court concludes the ALJ erred at step four of the disability evaluation process by finding Brancato was capable of performing his past relevant work as a gambling dealer. The Court also determines this error was not harmless. Finally, the Court finds the ALJ failed to provide clear and convincing reasons for the adverse credibility determination based on Brancato's continued work history after his diagnosis as well as his employment as a taxi driver for a single day. Therefore, the Court rejects the Report and Recommendation, remands this case to the Social Security Agency to determine at step five whether Brancato is able to perform other kinds of work, and instructs the ALJ on remand to reconsider its adverse credibility determination insofar as it was based on the above factors.

#### A.  Past Relevant Work

ALJ Norman L. Bennett issued a decision on September 12, 2011 finding Brancato was not disabled under Sections 216(i) and 223(d) of the Social Security Act. AR 27-33. The ALJ decided Brancato's case at step four of the disability evaluation process. In doing so, the ALJ found Brancato "had the following medically determinable impairments: left eye cataract, bilateral retinitis pigmentosa, and obesity." AR 29. The ALJ also found "these conditions

constituted severe impairments in that they had more than a minimal affect [sic] on [Brancato's] ability to work," and that Brancato had a 30-degree field of vision in both eyes. AR 30. After consideration of the record, the ALJ assessed Brancato as having "the residual functional capacity to perform light work, as defined in 20 CFR [§] 303.1567(b), except that he could not be around work hazards, dangerous moving machinery, and could not do jobs requiring peripheral vision." Id. Based on this assessment of Brancato's RFC, ALJ Bennett found Brancato "was capable of performing his past relevant work as a gambling dealer," the requirements of which are set out in the Dictionary of Occupational Titles ("DOT") code 343.464.010.[1] The ALJ explained Brancato could perform this work "as he actually performed it, and as it is generally performed, per the vocational expert's testimony." AR 33.

1. The ALJ's Conclusion

ALJ Bennett's conclusion that Brancato was capable of working as a gambling dealer as defined by the DOT and the testimony of the vocational expert ("VE") was error. DOT 343.464-010 states the "Physical Demands" for the occupation of gambling dealer include the following:

Field of Vision: Frequently – Exists from 1/3 to 2/3 of the time

At the hearing held before ALJ Bennett on September 7, 2011, the ALJ examined VE Kenneth Lister regarding this occupation, as well as the occupation of gambling monitor. As outlined in the factual background of Judge Foley's Report and Recommendation, confusion existed in the questions and answers between ALJ Bennett and VE Lister. Report & Recommendation at 7–8. The transcript clearly shows the ALJ mistakenly understood that field of vision is not required for the occupation of gambling dealer. Therefore, the ALJ understood the VE's testimony to mean Brancato was capable of working as a gambling dealer. AR 72. As set forth in the DOT, however, field of vision *is* required for the position of gambling dealer, but not for the position of gambling monitor. The VE's testimony indicated Brancato would not be

---

[1] The DOT "is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015) (internal quotation marks omitted). Although the DOT's job descriptions are presumptively applicable, this presumption is rebuttable either by expert testimony contradicting the DOT or evidence from the claimant demonstrating his particular job duties were not those described in the DOT for the job in question. Shalala, 60 F.3d at 1435; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986).

1  capable of performing a job where field of vision is frequently required. Thus, the ALJ's
2  conclusion that Brancato was capable of performing his prior job as a gambling dealer—which
3  purportedly relied upon the DOT's description of that job and the VE's testimony—was not
4  supported by substantial evidence, because it clearly reflected the ALJ's confusion or
5  misunderstanding as to whether field of vision is required for a gambling dealer.

### 2. Harmless Error

The Commissioner argues this error was harmless because substantial evidence existed in the record to support finding Brancato's past relevant work included two positions (gambling dealer and gambling monitor) and that he could return to that work, "whether it be one job or the other." Opp'n Mot. Remand 4, ECF No. 13. Brancato argues the error was not harmless because the record did not contain substantial evidence to support a finding that his experience as a gambling monitor rose to the level of "substantial gainful activity." Mot. Remand 8-10, ECF No. 12. Brancato also contends the ALJ impermissibly classified Brancato's past work "according to some of the least demanding functions of that past work." Id. at 10.

Courts are to apply the same harmless error rule applicable in civil cases to Social Security cases. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2010) (citing Shinseki v. Sanders, 556 U.S. 396 (2009)). Under this rule, "the burden is on the party attacking the agency's determination to show that prejudice resulted from the error. . . . Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." McLeod, 640 F.3d at 887.

The Court finds ALJ Bennett's error regarding whether Brancato could perform his past relevant work was not harmless for two reasons. First, the ALJ erred in finding Brancato was capable of performing the past relevant work of a gaming monitor because the record does not support such a classification. "A job qualifies as past relevant work only if it involved substantial gainful activity." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). Substantial gainful work activity is work involving significant physical or mental activities done for pay or profit. 20 C.F.R. § 1572. The agency determines whether past work qualifies as substantial gainful activity by considering the financial income *actually* earned from the work activity. 20 C.F.R. §

1  404.1574(a)(1)-(2) (emphasis added). The agency uses the guidelines set forth in 20 C.F.R. §
2  404.1574(b)(2) to determine if the earnings constitute substantial gainful activity and considers
3  the time spent in work, work performance, and the nature of the work. 20 C.F.R. § 1573 (a), (b),
4  (e). Moreover, "[i]n classifying prior work, the agency must keep in mind that every occupation
5  involves various tasks that may require differing levels of physical exertion. It is error for the
6  ALJ to classify an occupation according to the least demanding function." Carmickle v. Comm'r,
7  Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) (internal quotation marks omitted).

8      The administrative record is not developed enough to determine whether Brancato was
9  employed as both a gambling dealer and a gambling monitor or solely as a gambling dealer with
10 some monitoring responsibilities. Brancato testified he worked mostly as a gambling dealer. AR
11 89. Sometime after completing the probationary period of employment, Brancato informed the
12 human resource department he had bilateral retinitis pigmentosa and explained it caused his
13 vision difficulties. AR 83. His employer attempted to accommodate Brancato by scheduling him
14 during slower shifts and assigning him monitoring duties. AR 89. However, the record lacks
15 evidence indicating whether Brancato's compensation changed after this change in work
16 assignment; whether he was actually compensated for his monitoring duties and, if so, whether
17 the compensation was sufficient under 20 C.F.R. § 404.1574(b)(2); the amount of time Brancato
18 actually spent as gambling monitor rather than a gambling dealer; and whether his performance
19 as a gambling monitor was satisfactory. Without knowing Brancato's financial earnings for the
20 separate positions, the time spent in each position, or his level of performance as a gambling
21 monitor, the ALJ could not have determined whether the monitoring duties constituted
22 substantial gainful activity as required by the statute. Further, because no evidence exists in the
23 record that Brancato was employed as a gambling monitor rather than a gambling dealer with
24 some monitoring duties, it would have been error for the ALJ to classify Brancato's past relevant
25 work experience by focusing on the monitoring responsibilities, which were less demanding and
26 did not require field of vision per the DOT.

27     Second, even if the Court had found gambling monitoring qualified as past relevant work
28 in Brancato's case, the record demonstrates the DOT's *Selected Characteristics* do not

accurately reflect the exertional demands of a gambling monitor. "The Secretary may rely on the general job categories of the [DOT], with its supplementary *Selected Characteristics,* as presumptively applicable to a claimant's prior work." Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). The claimant may overcome this presumption by demonstrating the duties in his particular line of work were not those envisioned by the *Dictionary's* drafters or by demonstrating the *Selected Characteristics* inaccurately evaluates the exertional demands of a job title that does apply. Id. The DOT, in section 343.367-014, provides a gambling monitor "[o]bserves patrons and employees participating in gambling activities to detect infractions of house rules" and "[w]atches participants in games such as dice or cards to detect cheating, identify rule violators, and observe persons designated by superiors." DOT 343.367-014.

However, the DOT also provides the physical demands of a gambling monitor do not include activity requiring field of vision. See DOT 343.367-014. The Court finds this to be logically inconsistent with the aforementioned duties, specifically field of vision is necessary to successfully observe and detect rule violators, which reasonably can include patrons and employees or dealers in card and dice games. As a monitor of the same game for which he had previously been a gambling dealer, Brancato was responsible for observing patrons/employees and detecting infractions, rule violators, and persons designated by his supervisors. It follows Brancato would need to be able to observe more activity than that in his direct line of sight.

Additionally, to the extent Brancato's move from a gambling dealer to a gambling monitor implicitly contradicts the need for field of vision as a gambling monitor, the Court is not persuaded that field of vision is not a necessary capability of a gambling monitor, because additional accommodations were made in order for Brancato to perform the job. The record indicates an employer would eventually notice Brancato's vision problem even if he was hired as a monitor, indicating field of vision is a necessary capability. AR 83. Moreover, taking the circumstances as a whole, the record indicates the casino adjusted Brancato's responsibilities because he had been an employee for a substantial amount of time and due to the imminent closing of the casino. Brancato worked as a dealer for thirty-six years, the last six of which were spent with his last place of employment. AR 65, 89. He began performing monitoring duties only

towards the end of his career, which was near the time the casino closed. AR 89. Brancato testified he was well liked within the business and believed the casino adjusted his duties in order to keep him on until they closed. Id. The combination of the significant amount of time Brancato was employed at the casino and his agreeable reputation suggests that Brancato was placed in the position of gambling monitor not because he was qualified but because of his history with the company and the imminent closing of the casino.

Accordingly, the ALJ's error was not harmless. The record does not support classifying gambling monitor as past relevant work for Brancato and the DOT's *Selected Characteristics* inaccurately reflect the exertional demands of a gambler monitor. Given the reasonable demands of the position, it does not appear that Brancato was ever qualified to perform the job of a gambling monitor. Therefore, the matter must be remanded for consideration at step five of the SSA's evaluation procedure.

### B.  Adverse Credibility Determination

The ALJ also based his opinion on the decision to discredit Brancato's testimony offered at the Social Security hearing. AR. 31. The ALJ may only reject Brancato's testimony by providing "specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). The ALJ found Brancato was not credible for two reasons. First, the ALJ found Brancato was diagnosed with retinitis pigmentosa approximately fifteen years before he filed for disability. AR 31. The ALJ also found Brancato continued to work until 2006 despite his condition. Id. Consequently, the ALJ determined if the condition had not previously prevented Brancato from working, the condition would not currently prevent him from working. Id. However, as Brancato stated at the hearing, retinitis pigmentosa is a progressive disease, meaning it increases in extent or severity over time. *Retinitis Pigmentosa*, FOUNDATION FIGHTING BLINDNESS, http://www.blindness.org/retinitis-pigmentosa (last visited October 30, 2015). While the ALJ discredited Brancato's testimony on the grounds that the record revealed approximately the same level of severity prior to the alleged onset date, he failed to cite any part of the record to support his specific finding. AR 31. Rather,

the ALJ cited Exhibits 7F, 9F, and 11F to support his finding that Brancato could perform jobs not requiring field of vision. Id. Because the Court finds the position of gambling monitor does require field of vision and the ALJ failed to cite clear and convincing evidence regarding Brancato's peripheral field of vision, the ALJ erred in rejecting Brancato's testimony based upon his diagnosis date and continued work history.

Second, the ALJ found Brancato was capable of performing most basic work activities because he passed an eyesight test and worked as a taxi driver for a day. AR 31. The ALJ also found that although Brancato stopped working as a taxi driver, he did so because he was overwhelmed, not because of his vision problems. AR 31. However, Brancato explained he passed the eyesight test by maneuvering his head in order to see the exam chart, essentially cheating the exam. AR 91. Brancato further testified driving as a taxi driver was stressful and he stopped working as a taxi driver because of the "swarms of people" as well as fearing he would hit someone due to his vision problems. AR 67, 80. Accordingly, the ALJ erred in rejecting Brancato's testimony based upon the single day he worked as a taxi driver, because Brancato's testimony indicates he stopped working as a taxi driver specifically because of his vision problems.

The ALJ erred in finding Brancato capable of performing past relevant work and discredited his testimony without providing clear and convincing reasoning. Therefore, this Court remands the matter for the ALJ to reconsider Brancato's application at step five of the SSA's evaluation procedure. Further, in reconsidering the credibility of Brancato's testimony, the ALJ is not to base adverse credibility determinations on the aforementioned factors.

V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Report and Recommendation, ECF No. 16, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff John Brancato's Motion for Reversal and Remand, ECF No. 12, is **GRANTED**.

**IT IS FURTHER ORDERED** that the matter be remanded for further proceedings before the Administrative Law Judge.

DATED this 30th day of December, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**